UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICHARD JENNINGS, on behalf of himself
And all others similarly situated,

                Plaintiff,

    -against-

REXALL SUNDOWN, Inc.

                Defendant.

Civil Action No.

Class Action Complaint

Jury Trial Demanded

      Plaintiff, by and through his counsel, Meiselman, Denlea, Packman, Carton & Eberz P.C.,

brings this class action lawsuit on behalf of himself and a class of similarly-situated individuals

who have purchased an "Osteo Bi-Flex" product manufactured by Defendant from August 10,

2007 through the present.

## PARTIES

    1.     Plaintiff Richard Jennings ("Jennings") is a natural person of full age of majority

who is domiciled and residing in  Oak Bluffs, Massachusetts.

    2.     Defendant Rexall Sundown, Inc. ("Rexall") is a corporation organized and

existing under the laws of the State of Florida, with its principal place of business in Bohemia,

New York.

## JURISDICTION AND VENUE

    3.     This Court has jurisdiction over this action pursuant to the Class Action Fairness

Act of 2005, 28 U.S.C. § 1332(d).  Jurisdiction is proper because (1) the matter in controversy

exceeds the sum or value of $5,000,000.00, exclusive of interests and costs and (2) the named

Plaintiff and the Defendant are citizens of different states. 28 U.S.C. §1332(d)(2)(A).

4.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because a

substantial part of the events giving rise to the claim occurred within this judicial district, and

because defendant has marketed and sold the products at issue in this action within this judicial

district and has done business within this judicial district.

## GENERAL ALLEGATIONS

5.     Rexall is the manufacturer and seller of a wide variety of vitamin, nutritional and

dietary supplement products.

6.     One of Rexall's most successful products is a line of dietary supplements sold

under the trademarked name Osteo Bi-Flex. The Osteo Bi-Flex product line is a line of products

that contain, among other contents, glucosamine and chondroitin. The annual sales of the Osteo

Bi-Flex products are in excess of $100 million. The Osteo Bi-Flex products are sold nationwide

in drug stores, supermarkets, warehouse clubs and mass merchandisers, including Wal-Mart,

Sam's Club, CVS, Duane Reade and Target. Rexall extensively advertises its Osteo Bi-Flex

product line in consumer and trade media with national distribution, and also maintains a website

devoted exclusively to its Osteo Bi-Flex line of products (http://www.osteobiflex.com).

7.     All of Rexall's products in its Osteo Bi-Flex product line contain glucosamine,

chondroitin and/or a methylsulfonylmethane.

8.     The Osteo Bi-Flex product line currently includes the following:

Osteo Bi-Flex One Per Day Glucosamine HCl & Vitamin D3 with 5-Loxin
Advanced;

Osteo Bi-Flex Triple Strength Glucosamine Chondroitin MSM with 5-Loxin
Advanced;

2

Osteo Bi-Flex Double Strength Glucosamine Chondroitin MSM with 5-Loxin Advanced;

Osteo Bi-Flex Triple Strength  Glucosamine Chondroitin MSM with 5-Loxin Advanced with Vitamin D3 2000 IU;

Osteo Bi-Flex Glucosamine Chondroitin with 5-Loxin Advanced MSM with Hyaluronic Acid;

Osteo Bi-Flex Glucosamine Chondroitin Energy Formula with 5-Loxin Advanced;

Osteo Bi-Flex Regular Strength Glucosamine Chondroitin Complex; and

Osteo Bi-Flex Advanced Glucosamine Chondroitin MSM with 5-Loxin Advanced.

9.      Millions of adults in the United States live with arthritis, a disease involving the breakdown of cartilage in joints, or other orthopedic disorders in which cartilage in joints is broken down over time and causes bones in those joints to grind against each other.  Cartilage normally protects a joint, allowing it to move smoothly, and also absorbs shock when pressure is placed on the joint.  Without normal amounts of cartilage, the bones in the joint rub together, causing pain, swelling and stiffness.  These conditions are often extremely painful and result in limitations on motion, and most often impact elderly persons.

10.      In response to the desperation of consumers suffering from painful and debilitating arthritic and other orthopedic conditions, dietary supplement manufacturers have rolled out a variety of products promising relief from chronic pain.  Manufacturers pushing for more market share have not been content to advertise pain relief, and have been making more and more outlandish promises to consumers, including promises that supplements can promote joint health and mobility through structural changes to joints.

3

11.     Defendant Rexall is one such manufacturer. Rexall manufactures, markets, and sells the Osteo Bi-Flex products, which contain glucosamine hydrochloride, chondroitin and/or a methylsulfonylmethane.

12.     Glucosamine is an amino sugar that the body distributes in cartilage. It is produced commercially from crustacean exoskeletons, and is one of the most common, non-vitamin dietary supplements sold in the United States.

13.     Chondroitin is a sulfated glycosaminoglygan composed of a chain of alternating sugars. Chondroitin sulfate is a structural component of cartilage and provides resistance to compression.

14.     Methylsulfonylmethane is an organic compound containing sulfur, and is considered to be a relatively inert chemical compound.

15.     None of these ingredients will help build or renew cartilage or repair damage to joints.

16.     Nonetheless, Rexall promotes that its Osteo Bi-Flex products will help "renew cartilage." The packages that the Osteo Bi-Flex products come in contain, in a boxed section of the packaging and also in a textual section of the packaging, the statement that the products help "renew cartilage." In fact, the package that Osteo Bi-Flex Glucosamine Chondroitin with 5-Loxin Advanced MSM with Hyaluronic Acid comes in actually claims that the product "helps build cartilage." The website that advertises the Osteo Bi-Flex line of products, which is sponsored by Rexall, states, as part of the advertising for several of the products contained in the product line, that "glucosamine helps rejuvenate joint cartilage."

17.     The statement that the Osteo Bi-Flex products help "renew cartilage" is false and misleading. There is no scientifically sound study demonstrating that the Rexall Osteo Bi-Flex

4

products can help renew cartilage. The statement that the Osteo Bi-Flex products help "renew cartilage" is not substantiated.

18.     There is no study or literature substantiating, or even suggesting, that glucosamine, chondroitin, or methylsulfonylmethane can help renew or rejuvenate cartilage, as studies on the topic have confirmed:

> a.     In February 2006, the New England Journal of Medicine published a report on a double blind study addressing in part the efficacy of ingesting glucosamine hydrochloride 1500mg. Clegg, et al. Glucosamine, Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis. New Eng. J. Med. 354:795-808 (Feb. 2006). The study concluded that there was no showing that the supplement was effective in treating osteoarthritis.
>
> b.     In February 2008, the Annals of Internal Medicine published a study entitled, "Effect of Glucosamine Sulfate on Hip Osteoarthritis: a Randomized Trial." Annals of Internal Medicine 2008 Feb 19;148(4): 268-277. The article published the results of a study which examined whether glucosamine sulfate has an effect on the symptoms and structural progression of hip osteoarthritis during two years of treatment; the conclusion reached from the study was that glucosamine sulfate was no better than placebo in reducing symptoms and progression of hip osteoarthritis.
>
> c.     In October 2008, the American College of Rheumatology's Journal, Arthritis & Rheumatism, published a report on a double blind

5

study conducted at multiple centers in the United States examining joint space width loss with radiograph films in patients who were treated with glucosamine hydrochloride. The authors concluded that after two years of treatment with this supplement, the treatment did not demonstrate a clinically important difference in joint space width loss. Sawitzke et al., Glucosamine for Pain in Osteoarthritis: Why do Trial Results Differ?, Artritis Rheum. 58:3183-3191 (2008).

d.    In March 2009, Harvard Medical School published a study conclusively proving that the ingestion of glucosamine could not affect the growth of cartilage. The study took note of the foregoing 2006 and 2008 studies, which "cast considerable doubt" upon the value of glucosamine. The authors went on to conduct an independent study of subjects ingesting 1500 mg of glucosamine, and proved that only trace amounts of glucosamine entered the human serum, far below any amount that could possibly affect cartilage. Moreover, even those trace amounts were present only for a few hours after ingestion. The authors noted that a 1986 study had found no glucosamine in human plasma after ingestion of four times the usual 1500 mg of glucosamine chloride or sulphate. Silbert, Dietary Glucosamine Under Question, Glycobiology 19(6):564-567 (2009).

e.    In April 2009, the Journal of Orthopaedic Surgery published an article entitled, "Review Article: Glucosamine." The article's authors concluded that, based on their literature review, there was "little or no

evidence" to suggest that glucosamine was superior to a placebo even in

slowing down cartilage deterioration, much less rebuilding it.  Kirkham, et

al., Review Article: Glucosamine, Journal of Orthopaedic Surgery, 17(1):

72-6 (2009).

19.     To date, there are only two studies purporting to claim that the ingestion of

glucosamine can affect the growth or deterioration of cartilage, both sponsored by a glucosamine

supplement manufacturer: Pavelka et. al. Glucosamine Sulfate Use and Delay of Progression of

Knee Osteoarthritis, Arch. Intern. Med., 162: 2113-2123 (2002); Reginster et. al. Long-term

Effects of Glucosamine Sulphate On Osteoarthritis Progress: A Randomised, Placebo-Controlled

Clinical Trial, Lancet, 357: 251-6 (2001).  As noted in the April 2009 Journal of Orthopaedic

Surgery article, the methodologies in those studies had "inherently poor reproducibility," and

even minor changes in posture by the subjects during scans could cause false apparent changes in

cartilage.  The authors of the Journal of Orthopaedic Surgery article explained the manufacturer-

sponsored studies' findings by noting that "industry-sponsored trials report positive effects more

often than do nonsponsored trials and more find pro-industry results."

20.     There is no study that supports the claim that glucosamine, chondroitin and/or

methylsulfonylmethane, either alone of in combination, will restore, rebuild, renew or rejuvenate

joint cartilage that has broken down or worn away.

21.     Rexall sells its Osteo Bi-Flex line of products in the United States as a dietary

supplement in the United States. The Osteo Bi-Flex products are not regulated as a drug.

22.     Rexall sells its Osteo Bi-Flex line of products without any competent and reliable

scientific evidence that glucosamine, chondroitin and/or and methylsulfonylmethane will help to

"renew cartilage." At no time has Rexall had any competent, reliable or scientific evidence to

7

support its claim that its Osteo Bi-Flex line of products will help "renew cartilage." Rexall
lacked a reasonable basis to represent to consumers that its Osteo Bi-Flex products help "renew
cartilage," and did not have a reasonable basis to make the express claim that its Osteo Bi-Flex
products will help "renew cartilage." It lacks adequate evidence to substantiate its claim that its
Osteo Bi-Flex products help "renew cartilage," and therefore lacks any reasonable basis for the
claim that the products help "renew cartilage."

23.     Plaintiff has purchased Osteo Bi-Flex products. He purchased most of the Osteo
Bi-Flex products from Walmart or BJ's Wholesale Club, and purchased the products for his
personal use. The packages containing the Osteo Bi-Flex products that Plaintiff purchased all
contained the statement that the product helps "renew cartilage."

24.     Plaintiff purchased the Osteo Bi-Flex products because he believed, based upon
the packaging, that the products would help renew or rebuild the cartilage in his knee. When he
purchased the Osteo Bi-Flex products, Plaintiff believed that they would help renew and rebuild
the cartilage in his knee based upon the statements contained on the packages containing the
products. His belief that the products would help "renew cartilage" in his knee was reasonable
because Rexall, as a manufacturer and distributor of dietary supplements throughout the United
States, has superior knowledge, skill and expertise than Plaintiff to appreciate the truth or falsity
of the statement that the products help "renew cartilage." And he reasonably relied upon the
statement that the products would "renew cartilage" when he purchased the products.

25.     Plaintiff would not have bought the Osteo Bi-Flex products if he had known that
they would not help "renew" his cartilage.

## CLASS ACTION ALLEGATIONS

26.    Plaintiff seeks to be appointed as class representative of a class composed of and

defined as follows:

> All persons who bought any Osteo Bi-Flex product in Massachusetts, and did not
> resell it during the period from August 10, 2007 through the present. Excluded from
> the Class are the Defendant and any Judge presiding over this matter and the
> members of his or her immediate family. Also excluded from this class are the legal
> representatives, heirs, successors and attorneys of any excluded person or entity, and
> any person acting on behalf of any excluded person or entity.

27.    This action is appropriately suited for a class action.  Plaintiff is informed,

believes and thereon alleges that the Class is sufficiently numerous, such that a class action is

superior to other available methods for the fair and efficient adjudication of this controversy

because joinder of all Massachusetts purchasers of the Osteo Bi-Flex products is impractical.

28.    This action involves questions of law and fact common to the Class.  In marketing

the Osteo Bi-Flex products, Defendant engaged in a systematic course of misrepresenting the

products to Massachusetts consumers.  Such common issues of law and fact include but are not

limited to:

> a.    Whether the representation that Osteo Bi-Flex products help
> "renew cartilage" was and is likely to mislead consumers;
>
> b.    Whether failing to disclose that Osteo Bi-Flex products would not
> promote renewal of cartilage was likely to mislead consumers;
>
> c.    Whether Defendant made false or misleading representations
> regarding the effectiveness of the Osteo Bi-Flex products;
>
> d.    Whether Defendant represented that the Osteo Bi-Flex products
> have benefits which they do not have;
>
> e.    Whether Defendant represented that the Osteo Bi-Flex products
> were of a particular standard or quality when they were not;

f.      Whether Defendant advertised the Osteo Bi-Flex products with intent not to sell it as advertised;

g.      Whether, as a result of Defendant's misconduct, the Class is entitled to equitable relief, including restitution and injunctive relief;

h.      Whether the Class obtained the benefit of their bargain in purchasing the Osteo Bi-Flex products;

i.      Whether Defendant was unjustly enriched in collecting money from sales of the Osteo Bi-Flex products; and

j.      Whether, as a result of Defendant's misconduct, the Class is entitled to damages.

29.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and available remedies.

30.     Plaintiff's claims are typical of the claims of members of the Class, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff purchased Osteo Bi-Flex products, and suffered an injury-in-fact as a result of Defendant's conduct, as did all Class members. Plaintiff's interests are coincident with and not antagonistic to those of the other members of the Class. Plaintiff is represented by counsel who is competent and experienced in the prosecution of consumer class action litigation.

31.     A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated purchasers of the Osteo Bi-Flex products to adjudicate simultaneously their common claims in a single forum in an efficient manner, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many members of the Class who could not afford individually to

litigate the claims pleaded in this Complaint. There are no difficulties likely to be encountered in the management of this class action that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION
### (Violations of Unfair Trade Practices Act, Mass. Gen. Laws ch. 93A)

32.     Plaintiff hereby realleges, and incorporates by reference as though set forth fully herein, the allegations contained in Paragraphs 1 through 31.

33.     Through their conduct described above, including but not limited to breaching the express warranty that the Osteo Bi-Flex products help "renew cartilage," Defendant has engaged in deceptive acts and practices in violation of the Massachusetts Unfair Trade Practices Act, Mass. Gen. Laws ch. 93A §§ 2 et seq.("MUTPA"), the stated terms and intent of which is to protect consumers from unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

34.     Plaintiff satisfied the demand requirement set forth in Mass. Gen. Law. Ch 93A §9(3). Plaintiff sent a written demand letter to Defendant on May 12, 2011, which was received by Defendant, and the claim asserted herein has not been compromised or adjusted.

35.     Representing that the Osteo Bi-Flex products help "renew cartilage" when there is not competent or reliable scientific evidence substantiating that claim is deceptive, and has the capacity, tendency and effect of deceiving reasonable consumers who purchase the products. Reasonable consumers would believe that the Osteo Bi-Flex products help renew cartilage, based upon Defendant's misrepresentations to that effect.

36.     Defendant knew, or should have known, that the representation that its Osteo Bi-Flex products help "renew cartilage" was not substantiated by competent and reliable scientific evidence.

37.     Defendant made, and makes, the representation that its Osteo Bi-Flex products help "renew cartilage" with the intent to induce consumers, and members of the class sought herein, to purchase the products by causing them to rely on the representation that the products will help "renew cartilage."

38.     Defendants' unfair or deceptive practices were a willing and knowing violation of MUTPA.

39.     Plaintiff and the Class have suffered an ascertainable loss of money or property as a result of Defendant's actions.

40.     By reason of the foregoing, Defendant has violated MUTPA and is liable to Plaintiff and the Class, pursuant to Mass. Gen. Laws ch. 93A §§ 2 et seq., for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial but not less than $25.00 per consumer purchase, plus trebling and attorneys' fees.

**SECOND CAUSE OF ACTION**
**(Unjust Enrichment)**

41.     Plaintiff hereby realleges, and incorporates by reference as though set forth fully herein, the allegations contained in Paragraphs 1 through 31.

42.     Plaintiff and the Class have conferred benefits on Defendant by paying money for the Osteo Bi-Flex products.

43.     Defendant knowingly and willingly accepted monetary benefits from Plaintiff and the Class, but Defendant did not honor its obligations. Rather, Defendant benefited from the sales of the Osteo Bi-Flex products without providing the value promised.

12

44.     Under the circumstances described herein, it is inequitable for Defendant to retain the full monetary benefit at the expenses of Plaintiff and the Class.

45.     By engaging in the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiff and the Class, and is required, in equity and good conscience, to compensate Plaintiff and the Class for harm suffered as a result of its actions.

46.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement by Defendant of the benefit conferred by Plaintiff and the Class.

## THIRD CAUSE OF ACTION
### (Breach of Express Warranty)

47.     Plaintiff hereby realleges, and incorporates by reference as though set forth fully herein, the allegations contained in Paragraphs 1 through 31.

48.     Plaintiff and each member of the Class formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased the Osteo Bi-Flex products. The terms of that contract include the promises and affirmations of fact made by Defendant on its product labels. The product labeling constitutes an express warranty which became part of the basis of the bargain. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

49.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing a product which could provide the promised benefits as described above.

50.     As a result of Defendant's breach of its contract and warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the Osteo Bi-Flex products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that the Court enter judgment against Defendants as follows:

1.      Certifying this action as a class action as soon as practicable, with a class as defined above;

2.      On Plaintiff's First Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, trebled;

3.      On Plaintiff's Second Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial;

4.      On Plaintiff's Third Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial;

5.      Awarding Plaintiff and the Class interest, costs and attorneys' fees; and

6.      Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by jury.

DATED:  August 22, 2011

Respectfully submitted,

**MEISELMAN, DENLEA,
PACKMAN,  CARTON & EBERZ
P.C.**

By:

D. Greg Blankinship (BBO No. 655430)
1311 Mamaroneck Avenue
White Plains, New York 10605
Tel: (914) 517-5000
Fax: (914) 517-5055
gblankinship@mdpcelaw.com

Attorneys for Plaintiff Richard Jennings,
individually and on behalf of himself and
all others similarly situated

15