IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD JENNINGS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>REXALL SUNDOWN, INC.,<br><br>Defendant. | Civil Action No. 1:11-cv-11488-WGY<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO RETURN CASE TO TRIAL CALENDAR** |

      Defendant Rexall Sundown, Inc. ("Defendant" or "Rexall") hereby submits this Memorandum of Law in support of its Motion to Return Case to Trial Calendar. Under the express terms of the non-binding Memorandum of Understanding ("MOU") entered into on September 30, 2012 between Rexall and Plaintiff Richard Jennings ("Jennings"), Jennings was required to obtain the consent and participation of other plaintiffs and their counsel who have related lawsuits pending in Illinois and California ("Other Plaintiffs' Counsel").[1] Jennings failed to fulfill that express condition of the agreement.

      Because Jennings was unable to obtain Other Plaintiffs' Counsel's cooperation, Rexall negotiated directly with Other Plaintiffs' Counsel. Ultimately, Rexall obtained Other Plaintiffs' Counsel's consent to the MOU's terms and also agreed to additional injunctive relief. The only issue now remaining is the dispute between the two sets of plaintiffs' counsel, who advise that they are at an impasse because they cannot reach agreement on how to allocate among

---

[1] *Liliana Cardenas v. NBTY, Inc. and Rexall Sundown, Inc.*, No. 2:11-CV-01615-LKK-CKD (E.D. Cal. filed June 14, 2011); *Cecilia Linares and Abel Gonzalez v. Costco Wholesale, Inc.*, No. 3:11-cv-02547-MMA-RBB (S.D. Cal. filed Nov. 2, 2011); *Nick Pearson v. Target Corp.*, No. 1:11-cv-07972 (N.D. Ill. filed Nov. 9, 2011); *Ray Padilla v. Costco Wholesale Corp.*, No. 1:11-cv-07686 (N.D. Ill. filed Oct. 28, 2011).

themselves the attorneys' fees called for in the MOU.  Because plaintiffs' counsel have not been able to resolve their differences as to fees, Jennings has not obtained the required consent and participation of all plaintiffs' counsel, and the settlement cannot go forward.  And because the dispute between plaintiffs' counsel prevents the parties from going forward with the settlement, and as the other cases are still active with upcoming deadlines and discovery obligations, Rexall has no choice but to request that this case be returned to the trial calendar.

BACKGROUND AND ARGUMENT

On September 30, 2012, Rexall and Jennings entered into a non-binding MOU conditionally providing for a global settlement of not only the *Jennings* case, but four other glucosamine-related putative class actions brought by a different set of lawyers, pending in federal courts in other districts.  At the outset of settlement negotiations in the *Jennings* case, Rexall made it clear to Jennings' counsel that, if the settlement was to be a nationwide settlement, all plaintiffs' counsel in all of the related cases must participate.  K. McCall Decl. ¶ 3.  Jennings' counsel agreed to negotiate the terms of the MOU with the full understanding that he would be required to obtain the participation of the Other Plaintiffs' Counsel, which would be a prerequisite to settlement of this case even if the parties to the *Jennings* action could agree on the terms of the MOU.  *Id.*

Accordingly, Paragraph 10 of the MOU provides that the settlement agreement between Rexall and Jennings is "**expressly conditioned on (i)** *Plaintiff* **obtaining the consent of all named plaintiffs and their counsel in the Related Litigation** . . ." *Id*. ¶ 6 (emphasis added).[2]  Rexall bargained for this condition as part of its agreement to the MOU.  Indeed, this condition is

---

[2] The settlement is also "expressly conditioned on . . . (ii) approval by the Board of directors of Defendant's ultimate parent, and (iii) the agreement of the customers of Defendant and its affiliates." K. McCall Decl. ¶ 6.  Neither of these additional conditions can be met unless and until there is full participation by all plaintiffs' counsel.

a key part of the MOU as it provides Rexall protection against Other Plaintiffs' Counsel objecting to any settlement and requires the assistance of Other Plaintiffs' Counsel and their clients in disposing of the other litigations. Rexall would not have entered into the MOU without this express condition.

On October 1, 2012, the parties appeared in Court and informed the clerk that they had entered into a non-binding MOU, but that a final agreement was conditioned upon the drafting of a binding and definite settlement agreement, as well as Jennings' counsel obtaining the consent and participation of the Other Plaintiffs' Counsel. K. McCall Decl. ¶ 8. At that time, consistent with Jennings' counsel's representation to Rexall, Jennings' counsel expressed confidence to the clerk that he would be able to obtain such consent and participation. *Id.* The clerk indicated that trial was set for October 15, 2012 and requested that the parties provide a status report by October 10, 2012. *Id.*

On October 10, 2012, Jennings' counsel sent an email to the Court requesting, *on behalf of his client only*, that trial be continued until October 31, 2012 "in order to give the parties time to try to effect the global settlement of all cases, consistent with the Memorandum of Understanding . . . ." 10/10/12 P. Freiberg Email (Ex. A at 2).[3] Jennings' counsel asked "that the trial remain on the Court's calendar, but simply passed for a brief time." *Id.* Defendant insisted, however, that Plaintiff further advise the Court that "the parties cannot assure the Court of such settlement," and note that "defendant remains prepared, willing, and able to start trial on Monday, October 15, 2012." *Id.* Thereafter, the trial was postponed until October 22, 2012. 10/11/12 Email from Court (Ex. A at 1).

---

[3] All references herein to "(Ex. __)" are to exhibits to the Declaration of Kara McCall.

{W3456204.1}                                     3

On October 16, 2012, the Court requested an update on whether the parties believed they would be "going forward with the trial on Monday, October 22nd." 10/16/12 Email from Court (Ex. B at 3-4). Consistent with previous communications to the Court, Jennings' counsel again notified the Court – on behalf of his client only – that "the parties are still working on a global settlement that resolves this and the other cases pending in California and Illinois," and asked to be permitted to report further on October 18, 2012 "as is [sic] appears we need a bit more time to determine whether we will need to proceed on October 22." 10/16/12 P. Freiberg Email (Ex. B at 3).

On October 18, 2012, Jennings' counsel – *again, on behalf of his client only* – asked the Court to "adjourn the trial of this action to another trial term." 10/18/12 P. Freiberg Email (Ex. B at 2). In doing so, Jennings' counsel stated that "*plaintiff* believes that the claims in this case have been resolved, and that the prospect of a global settlement of all cases is imminent and real." *Id.* (emphasis added). Rexall did not express any such optimism, but did not object to Jennings' request since it was Jennings who was responsible for obtaining the participation and agreement of the Other Plaintiffs' Counsel necessary to effect a global settlement. Jennings' counsel acknowledged that the MOU "contemplates the resolution of four other cases pending in federal district courts in California and Illinois," and stated that negotiations with Other Plaintiffs' Counsel were still ongoing. Jennings' counsel therefore requested "that the Court *continue the trial to another trial term* to provide the parties additional time to finalize a global resolution," and informed the Court that he "will be in a position to report on the status of this matter within three weeks." *Id*. (emphasis added).

Neither of the parties ever requested that the case be removed from the Court's trial calendar. In October 10, 2012, Jennings' counsel asked only that trial be postponed, 10/10/12 P.

Freiberg Email (Ex. A at 2), and the Court responded by postponing trial until October 22, 2012. 10/11/12 Email from Court (Ex. A at 1). On October 18, 2012, Jennings' counsel asked only that the Court "continue the trial to another trial term to provide the parties additional time to finalize a global resolution." 10/18/12 P. Freiberg Email (Ex. B at 2). In doing so, Jennings' counsel informed the Court that the parties "will be in a position to report on the status of this matter within three weeks." *Id*. Jennings' counsel clearly recognized the need to keep the Court apprised of the progress of ongoing negotiations that were still uncertain to result in the hoped-for global settlement.

On October 18, the Court notified the parties that, "because the parties have reported that the case before this Court have reached a settlement, understanding the global settlement not finalized, Judge Young has agreed to remove this matter from his trial list as a settled matter. This of course comes along with any consequences that comes along with reporting the case settled." 10/18/12 Email from Court (Ex. B. at 1).

It is Rexall's understanding that, shortly after the parties executed the MOU, Jennings' counsel attempted to secure the participation of Other Plaintiffs' Counsel, but has not been able to do so. Indeed, it is Rexall's understanding that, until very recently, Other Plaintiffs' Counsel refused to negotiate with Jennings' counsel. In an attempt to further the negotiations, Rexall's counsel held discussions directly with Other Plaintiffs' Counsel, even though such negotiations were the obligation of Jennings' counsel under the terms of the MOU. By mid-November, it appeared to Rexall that a global settlement under the existing terms of the MOU was not imminent given Plaintiff's failure to secure the participation of the Other Plaintiffs' Counsel, and Rexall therefore believed at that time that a global settlement was unlikely.

Accordingly, on November 16, 2012, Rexall alerted the Court to this development and requested that this case be returned to the trial docket. D.E. 79. On November 19, 2012, Plaintiff's counsel submitted a letter objecting to Rexall's request and stating that he intended to seek approval of the settlement based on the MOU, ignoring much of the actual language of the MOU that makes clear that a final binding settlement agreement was not reached and that the conditions had not been met. D.E. 80. On November 19, 2012, the Court entered an order stating: "Treated as a motion to reopen, motion denied. This case was reported settled. It may be reopened for the purpose of a fairness hearing or for the filing of settlement papers." D.E. 81.

Rexall continued settlement negotiations and has now reached agreement with all plaintiffs' counsel on compensation and injunctive relief for the class. However, Rexall has been advised that the two sets of plaintiffs' counsel are at an impasse on the allocation of attorneys' fees. Unfortunately, without such agreement, full participation has not been accomplished, the express condition has not been met, and no global resolution can be effectuated.

Jennings has indicated to the court, and now again to Rexall, that it intends to file a motion for preliminary approval of a settlement as reflected in the non-binding MOU, but without the participation of Other Plaintiffs' counsel or their clients. Jennings has no right to do so, as a condition of the settlement has not been met: As stated in Paragraph 10 of the MOU, "[t]he Settlement of the Litigation, and the Parties' obligation to execute the Settlement Agreement, are expressly conditioned on (i) Plaintiff obtaining the consent of all named plaintiffs and their counsel in the Related Litigation . . . ." K. McCall Decl. ¶ 6. This condition has never been waived, and the condition is a key benefit for which Rexall bargained. Because Plaintiff has not obtained the requisite consent of the Other Plaintiffs' Counsel or their clients, it has not satisfied this key condition, and no written settlement agreement has been or could have

been executed. *See, e.g.*, *Sands v. Ridefilm Corp.*, 212 F.3d 657, 662 (1st Cir. 2000) (where a "condition precedent was not met, no binding obligation existed and no enforceable contract was created between the parties").

Further, and in light of the express conditions, the written terms of the MOU plainly reflect the parties' intent that the MOU is not a binding contract. In the introductory paragraph, the parties expressly acknowledge that the MOU is "[s]ubject to the execution of a written settlement agreement." K. McCall Decl. ¶ 4. "When 'parties contemplate the execution of a final written agreement,' a strong inference is made that they 'do not intend to be bound by earlier negotiations or agreements until the final terms are settled.'" *Mass Cash Register, Inc. v. Comtrex Sys. Corp.*, 901 F. Supp. 404, 415 (D. Mass. 1995) (quoting *Rosenfield v. U.S. Trust Co.*, 290 Mass. 210, 216, 195 N.E. 323, 325 (1935)).[4]

Additionally, paragraph 9 states that "[t]his MOU does not constitute a binding settlement agreement and shall not be admissible in court or otherwise used for any purpose whatsoever other than as a memorandum of the Parties' general understandings and their intent to negotiate further over the non-financial terms of any settlement." K. McCall Decl. ¶ 5. The parties' intention could not be more clear. *See McCarthy v. Tobin*, 429 Mass. 84, 87, 706 N.E.2d 629, 631 (1999) (In determining whether a pre-contractual agreement like the MOU constitutes an enforceable contract, "[t]he controlling fact is the intention of the parties."); *accord Hunneman Real Estate Corp. v. Norwood Realty, Inc.*, 54 Mass. App. Ct. 416, 421, 765 N.E.2d

---

[4] *See also 20 Atl. Ave. Corp. v. Allied Waste Indus., Inc.*, 482 F. Supp. 2d 60, 74 (D. Mass. 2007) ("'[T]he fact that a writing refers to a formal document to be executed in the future' . . . is strong evidence 'that the parties do not intend to be bound until the formal document is hammered out.'") (quoting *Gel Sys., Inc. v. Hyundai Eng'g & Constr. Co.*, 902 F.2d 1024, 1027 (1st Cir. 1990)); *Mendel Kern, Inc. v. Workshop, Inc.*, 400 Mass. 277, 281, 508 N.E.2d 853, 856 (1987) (fact that parties contemplated additional document "is cogent evidence that they did not intend that the letter of intent, even when accepted by [the plaintiff], would constitute a binding agreement").

800, 804 (2002) ("The most recent pronouncements in our cases on the subject of the enforceability of precontractual agreements place great reliance on the intention of the parties.").

Rexall's conduct was and has been consistent with its position that the MOU did not create a binding settlement. Rexall agreed to join in Jennings' request for more time solely because Plaintiff limited its request to a postponement – rather than a complete cancellation – of the trial. ***Rexall never asked nor allowed Jennings to ask to remove the matter from the Court's trial calendar altogether, nor did Rexall ever suggest to the Court that the case was settled***. Indeed, because it was Jennings' role to obtain the consent and participation of Other Plaintiffs' Counsel, Rexall thought it appropriate for Jennings to notify the Court of the status. At every step of the way, Rexall was prepared to go to trial and remains ready to proceed with trial now.

Rexall acquiesced in Jennings' repeated requests for more time in the hopes of being able to finalizing the global resolution contemplated by the MOU. Rexall has done all it can do, in further negotiating and reaching agreement on compensation and injunctive relief for the class. But because the plaintiffs' lawyers appear to have reached an impasse on the allocation of attorneys' fees, a global resolution is impossible at this time. Meanwhile, Rexall and its affiliates are exposed to multiple litigation in other forums while this matter is at a standstill among plaintiffs' counsel.

## CONCLUSION

Although Rexall still desires a global settlement involving all plaintiffs' counsel on the terms reflected in the MOU, plaintiffs' counsel's impasse on fees has made that impossible. Accordingly, Rexall respectfully asks that the Court reinstate this matter on its trial docket.

Dated: December 13, 2012							SIDLEY AUSTIN LLP

By: /s/ Kara L. McCall
Kara L. McCall
kmccall@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

By:  /s/ Donald. R. Frederico
Donald R. Frederico, BBO #178220
dfrederico@pierceatwood.com
PIERCE ATWOOD LLP
100 Summer Street, Suite 2250
Boston, MA  02110
Telephone: (617) 488-8141
Facsimile: (617) 824-2020

*Attorneys for Defendant Rexall Sundown, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the above was served upon the attorney of record for all parties via the Court's electronic filing system on December 13, 2012.

/s/  Donald. R. Frederico
Donald R. Frederico