## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

RICHARD JENNINGS, on behalf of himself
and all others similarly situated      :

          :     Civil Action No.: 1:11-CV-11488-WGY

         Plaintiff,     :

          :

    -against-     :

          :

REXALL SUNDOWN, INC.     :

          :

         Defendant.     :

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff, Richard Jennings ("Jennings"), respectfully submits this Memorandum in Support of his motion for preliminary approval of the class action settlement between him and Defendant, Rexall Sundown, Inc. ("Rexall").

## BACKGROUND OF THE LAWSUIT

Jennings brought this action on behalf of himself and all other similarly situated consumers, alleging that Rexall violated the Massachusetts Unfair Trade Practice Act, Mass. Gen Laws ch. 93A, §§2, *et seq.*, and breached an express warranty, in connection with its manufacturing, marketing and sale of a line of dietary supplements known as Osteo Bi-Flex. Osteo Bi-Flex contains glucosamine and chondroitin, and is sold as a "joint health supplement."   Jennings' Complaint challenges one specific claim that Rexall makes: that Osteo Bi-Flex will "renew" or "help renew" cartilage.   Jennings' Complaint is based upon the scientific and medical principles that adult articular cartilage is not vascularized (i.e., it has no blood flow) and lacks the capacity to regenerate itself after sustaining damage from injury or disease, including osteoarthritis; and that osteoarthritis, a disease which is characterized by the degradation and degeneration of articular cartilage that leads to pain and inflammation caused by bones grinding together, is not reversible.   Jennings alleges that the claim that the

products "renew" or "help renew" cartilage is false and deceptive.

Jennings first began purchasing and using Osteo Bi-Flex in approximately 1997. Over the next 14 years, Jennings purchased Osteo Bi-Flex on a monthly basis, and consumed it on a daily basis. Most of the Osteo Bi-Flex product that he purchased was Osteo Bi-Flex Triple Strength.   When Osteo Bi-Flex Triple Strength first came on the market, the packaging containing the bottle made a claim that it would help "rebuild cartilage." Later on, in approximately 2005, the packaging containing the bottle for Osteo Bi-Flex Triple Strength was changed so that it contained a claim that it would help "renew cartilage." Currently, the Osteo Bi-Flex Triple Strength product packaging contains the claim that it will help "renew cartilage."

Jennings alleges that the claim that Osteo Bi-Flex can renew or rebuild cartilage is deceptive because neither glucosamine nor chondroitin sulfate, alone or in combination with each other, will cause cartilage to rebuild or renew.   Expert testimony would be admitted at trial, by both Jennings' expert and by Rexall's experts, which proves that glucosamine and/or chondroitin sulfate are not capable of rebuilding or renewing cartilage, demonstrating that the claim that Osteo Bi-Flex will renew or rebuild cartilage is deceptive.

Jennings' expert, Jeremiah Silbert, M.D., has been working with the biosynthesis, cellular localization and measurement of chondroitin sulfate (as well as other glycosaminoglycans) for over 40 years, and is widely recognized as one of the leading authorities on glucosamine and chondroitin sulfate processes.   He would explain at trial that it is not possible that ingestion of either glucosamine or chondroitin sulfate, alone or in combination with each other, can contribute in any way to the effects on cartilage in the manner that Rexall claims, and that it is not possible that orally ingested Osteo Bi-Flex will renew cartilage.   Dr. Silbert's opinion is twofold.   First, he would explain that insignificant trace amounts of glucosamine or chondroitin enter human serum after ingestion of a standard

2

oral dose, far below any amount that might contribute directly to the synthesis of chondroitin. Second, he would explain that neither glucosamine nor chondroitin can have any effect or mechanism of action on cartilage, and cannot contribute to the rebuilding or renewal of cartilage.

Jennings would also rely upon the expert testimony of Rexall's expert witnesses to establish that the claim of rebuilding or renewing cartilage is false.   Rexall's expert, C. Thomas Vangsness, M.D. would testify that neither glucosamine nor chondroitin supplements help to renew or rebuild cartilage.   Although he recommends to patients that they try the supplements to alleviate pain or increase joint function, he does not tell patients that the supplements will regrow, rebuild, regenerate, renew or build cartilage, because he does not think that "the science is strong enough," and that "it overstates the science" to represent that the products will "renew" cartilage.   He would describe the literature involving glucosamine and chondroitin as "inconsistent" and "inconclusive," and would establish that there is no proof in the scientific literature that these supplements can stop the process by which cartilage degrades, much less cause an increase in the volume or thickness of cartilage.   He would also testify at trial that there is no proof in the scientific literature that glucosamine and/or chondroitin can stop the process by which articular cartilage degrades, and that the role of glucosamine and/or chondroitin in the treatment of osteoarthritis has not been scientifically substantiated and needs more critical evaluation.

Rexall's expert, Daniel A. Grande, Ph.D., would testify at trial that creating a "healthy joint" will not increase the amount of articular cartilage that a person has. He would explain that it has long been known that when articular cartilage is damaged by injury, there is little chance of its subsequent repair, and that it is widely accepted that damaged cartilage is the beginning of a degenerative sequela leading to osteoarthritis and ultimately the need for total joint arthroplasty.   Although he would claim that glucosamine and/or chondroitin can counter

the loss of cartilage, he would testify that there is <u>nothing</u> in the scientific literature that demonstrates that the supplements will cause cartilage to renew or rebuild. Dr. Grande would also authenticate two recent reports that he relied upon which show that there is no evidence that elevated levels of glucosamine increases the synthesis of extracellular matrix; and that regardless of formulation used, following a dose of 1500 mg/day of glucosamine, no or marginal beneficial effects may be observed because of under-dosing which stems from low glucosamine bioavailability and inconsistency in chemical potency, all of which yield sub therapeutic plasma concentrations of glucosamine.

Following motion practice directed to the pleadings, on April 10, 2012, the Court scheduled an "exemplar trial" of Jennings' claims, setting that trial for the October 2012 trial term.   Between April 2012 and September 2012, the Parties engaged in extensive (and expedited) discovery in preparation for the exemplar trial.   The discovery consisted of the exchange of documents (Rexall produced over 7,000 pages of documents), the deposition of Jennings, the depositions of two Rexall employees involved in the process of substantiating the claims made by Rexall, the exchange of expert disclosures (one on behalf of Jennings and two on behalf of Rexall), and the depositions of these three expert witness (in Boston, Manhasset, New York, and Los Angeles).   Rexall's motion for summary judgment was denied by the Court, and the Parties submitted a lengthy Pre-Trial Memorandum, as well as pleadings in anticipation of trial (motions in limine and oppositions thereto, requested jury charges, proposed jury verdict forms, and proposed voir dire questions).

## BACKGROUND OF THE SETTLEMENT

On September 30, 2012, on the literal eve of trial, Jennings and Rexall signed a Memorandum of Understanding (the "MOU").   (Exhibit A to the Declaration of Peter N. Freiberg). The MOU resolves all claims in this case.   In the MOU, Jennings and Rexall agreed .                                                              **REDACTED**

**REDACTED**

**REDACTED**

The settlement followed several months of intense, and at times contentious, negotiations between counsel for the Parties.   In May 2012, counsel for the Parties broached the subject of settlement.   A conference call was conducted between counsel at which the general constructs of a settlement were discussed, which was followed by a letter from Rexall's counsel to Jennings' counsel which proposed in writing the general constructs of a

---

1

settlement.   Numerous conference calls were subsequently held between counsel, during

which the relief to be afforded to the class was discussed, and it was at all times agreed

between counsel that no discussion related to attorneys' fees would be held until after the

terms of the settlement in favor of the class and Rexall had been determined.   Ultimately,

following numerous conferences among counsel, and as the exemplar trial was approaching,

the Parties agreed to resolve the claims in this case, first determining the benefit to the class

members and then negotiating the issue of attorneys' fees.   The terms of the settlement of

this case are set forth in the MOU dated September 30, 2012.

By this motion, Jennings asks the Court to grant preliminary approval of the class

action settlement so that notice may be disseminated to the class and the matter set for a final

fairness hearing.

## LAW AND ARGUMENT

**A.     The Terms of the Settlement Are Presumptively Fair and
Reasonable, And the Court Should Grant Preliminary Approval**

### 1.     Standards Governing Preliminary Approval

"There is a strong judicial policy in favor of settlements, particularly in the class action

context.   The compromise of complex litigation is encouraged by the courts and favored by

public policy." *Denney v. Jenkins Gilchrist*, 230 F.R.D. 317, 328 (S.D.N.Y. 2005) (internal

citation and quotation marks omitted), *aff'd in part and vacated in part on other grounds*, 443

F. 3d 253 (2nd Cir. 2006).   See, also, *In re PaineWebber Ltd. P'Ships Litigation*, 147 F.3d

132, 138 (2nd Cir. 1998). The law favors class action settlements.   *See, e.g., City P'Ship Co.
v. Atl. Acquisition Ltd. P'Ship*, 100 F.3d 1041, 1043 (1st Cir. 1996).

Class action suits readily lend themselves to compromise because of the difficulties of

proof, the uncertainties of the outcome, and the typical length of the litigation.   There is a

strong public interest in quieting any litigation; this is particularly true in class actions. *In re*

*Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citations omitted)).

Courts promote the "overriding public interest" in facilitating class action settlements by routinely granting motions for preliminary approval.   Preliminary approval requires only that "that the proposed settlement is fair, reasonable, and adequate." *Ayzelman v. Statewide Credit Servs. Corp.*, 238 F.R.D. 358, 364 (E.D.N.Y. 2006) (internal citation omitted).   Where the court finds that (1) the negotiations occurred at arm's length, (2) there was sufficient discovery, (3) the proponents of the settlement are experienced in similar litigation, and (4) only a small fraction of the class objects, a presumption of fairness attaches to the court's determination.   *In re Gen Motors Corp. Pick-Up Truck Fuel Tanks Products Liab. Litiga*tion, 55 F.3d 768, 785 (3rd Cir. 1995), cited *by In re Lupron Marketing and Sales Practice Litigation*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004),   "Thus, [w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of possible approval, preliminary approval is granted." *Bourlas v. Davis Law Associates*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) (quoting *In re Nasdaq Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citing *Manual for Complex Litigation* § 30.41 (1995))). When sufficient discovery has been provided and the parties have bargained at arm's-length, there is a presumption in favor of the settlement. *See United States v. Cannons Engineering Corp.,* 720 F.Supp. 1027, 1036 (D.Mass.1989) (quoting *City of New York v. Exxon,* 697 F.Supp. 677, 692 (S.D.N.Y.1988)), *aff'd,* 899 F.2d 79 (1st Cir.1990).

The preliminary approval hearing "is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd. of School Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980) (footnote omitted).   In addition, "[t]here is usually an initial presumption of

fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for Court approval." H. Newberg, A. Conte, Newberg on Class Actions (4th ed. 2002), §11.41; *see In re Employee Benefit Plans Secs. Litig.*, No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) ("[t]he court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement"). Although the trial court must consider the terms of a class action settlement, "'[j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.'" *Petrovic v. Amoco Oil Co.*,   200 F.3d 1140, 1148-49 (8th Cir. 1999).

The Manual For Complex Litigation sets forth the procedures for preliminary approval of settlements:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual*, § 21.632.

Thus, the question for this Court is whether the settlement falls within the "range of possible approval," *id.,* and is sufficiently fair, reasonable and adequate to warrant dissemination of notice apprising class members of the proposed settlement and to establish procedures for a final settlement hearing under Rule 23(e). *See Durrett v. Housing Authority of City of Providence,* 896 F.2d 600, 604 (1st Cir. 1990). The initial presumption of fairness of a class settlement may be established by showing: (1) that the settlement has been arrived at by arm's length bargaining; (2) that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; and (3) that the proponents of the settlement are counsel experienced in similar litigation. Newberg, at §11.41.   In determining whether class action settlements should be approved, "[c]ourts judge the

fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. [citation omitted] ... They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88, 101 S.Ct. 993, 999, 67 L.Ed.2d 59, n.14 (1981). Application of these factors supports entry of an Order preliminarily approving the settlement.

      a.    <u>**The Settlement is Fair and Reasonable**</u>

REDACTED

REDACTED

### b.    The Settlement was Negotiated at Arm's Length

There is an initial presumption of fairness because the settlement is the product of arm's length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation.   *In re General Motors Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995) ("This preliminary determination establishes an initial presumption of fairness when the court finds that:   (1) the negotiations occurred at arm's length.... [and] (3)   the proponents of the settlement are experienced in similar litigation. . . ."); *see also* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.4§§1 at 90 (2002); *Manual for Complex Litigation* (Third) § 30.42 (1995); *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 662.

Settlement here was achieved through arm's length discussions.   As reflected more fully in the accompanying Declaration of Peter N. Freiberg, the Parties began settlement discussions in May 2012. The initial discussions focused on the general construct of a settlement, without any specifics as to monetary compensation to the class or attorneys' fees. Thereafter, numerous conference calls were conducted between counsel for the Parties, during which offers and demands were exchanged. Only after the relief to the class was agreed upon did the Parties discuss the issue of attorneys' fees and incentive awards. At no time did counsel for the Parties collude, and at all times counsel for the Parties strenuously advocated their respective positions.   In fact, the settlement discussions were conducted in tandem with trial preparation, so that the Parties were both in a sufficient position to evaluate the overall strengths and weaknesses of one another's position.

### c.    Sufficient Discovery was Taken

Ample discovery was taken in this matter to enable both Parties to prepare for trial and to understand their respective cases. Depositions of both Plaintiff Jennings and two employees of Defendant Rexall, who are responsible for substantiating the claims that Rexall

makes for its products, were conducted, after a large production of documents was made. Rexall produced its "substantiation file" consisting of over 7,000 pages of documentation. And, three expert witnesses were disclosed (with accompanying Rule 26 expert disclosures) and deposed, thus enabling both Parties to understand the legal, scientific and medical aspects of this case.   It was only on the very eve of trial that this case was settled, such that the Parties were both in a sufficient position to evaluate the strengths and weakness of their cases, as well as the utility of a negotiated disposition of this case.

>    **d.    Counsel for the Parties are Experienced in**
>    <u>**Consumer Class Action Litigation**</u>

Jennings is represented by attorneys of the law firm of Denlea & Carton, LLP, a firm in White Plains, New York whose lawyers have an extensive track record of success in prosecuting consumer fraud and other types of class action lawsuits.   Rexall is represented by the national firms of Sidley Austin LLP and Pierce Atwood LLP, both of which are well-versed in defending complex class action lawsuits. As will be shown further on the motion for final approval of this class-action settlement, the settlement was negotiated by competent and experienced counsel.

The settlement falls well within the range of reasonableness, and was agreed to after sufficient discovery and litigation was conducted by experienced counsel. Jennings respectfully requests that the Court should grant its preliminary approval of the settlement so that notice may be provided to the class members and their reaction to it gauged at the final fairness hearing.

>    **2.    <u>Procedural Matters Going Forward</u>**

>    **a.    <u>The Court Should Certify a Settlement Class</u>**

The class of claimants that Jennings and Rexall agreed upon will be bound by the settlement is as follows:

**REDACTED**

2

The fact that class certification is requested only for purpose of settlement is no barrier

to certification.   *In re M3 Power Razor System Marketing & Sales Practice Litigation*, 270

F.R.D. 45, 54 (2010).   The preliminary hearing is also utilized to consider the certification of a

settlement class if the proposed class has not previously been certified by the court.   *In re*

*Baldwin-United Corp.*, 105 F.R.D. 475 (S.D.N.Y. 1984); 2 Newberg, § 11.22.   It has become

accepted practice to seek certification of a class for settlement purposes in connection with

settlements reached before the formal certification ruling has been made.   2 Newberg, §

11.22.   The standards employed to measure these requirements are lessened in the

settlement context as it is entirely proper to certify, as a settlement class, a group that might

have difficulty obtaining certification in a non-settlement context.   2 Newberg, § 11.27.

"A class may be certified 'solely for purposes of settlement where a settlement is

reached before a litigated determination of the class certification issue.'"   *Borcea v. Carnival*

*Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006), *citing Woodward v. NOR-AM Chem. Co.*, 1996

WL 1063670 * 14 (S.D.Al. 1996).   "At the preliminary approval stage, the court 'should make

---

2 Jennings' operative complaint is brought on behalf of Massachusetts consumers.
Jennings will be filing a motion seeking leave of the Court to file an amended complaint
, consistent with the Parties'
nationwide settlement.   See, *Wolph v. Acer America Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011)
(granting leave to amend complaint to conform to modified class definition); and F.R.Civ.P.
23(d)(1)(E) (authorizing court to issue orders to deal with procedural matters related to
conduct of class actions).

REDACTED

a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).'"   David F. Herr, Ann. Manual Complex Lit. § 21.633, Settlements (4th ed. 2011), *citing In re Wireless Facilities, Inc. Securities Litigation II*, 253 F.R.D. 607 (S.D. Cal. 2008).   However, "it is altogether proper and consistent for a court to certify a class for settlement purposes while it might have had more difficulty reaching this determination in a different context." *Mid-Atlantic Toyota Antitrust Litigation*, 564 F. Supp. at 1391.   For example, the Supreme Court noted that a court "need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."   *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

　　　　To ultimately obtain class certification, Rule 23(a) requires a showing of the following: (1) the class is so numerous that joinder is impracticable; (2) questions of law or fact are common to the class; (3) the claims of the representative plaintiff are typical of the claims of the class; and (4) the class representative will fairly and adequately protect the interests of the class.   In addition, the proposed settlement class must satisfy at least one requirement of Rule 23(b).   Here, Jennings can establish the requirements of both Rule 23(b)(2) and Rule 23(b)(3) because common legal and factual issues predominate over individualized issues, and class treatment "is superior to other available methods for fairly and efficiently adjudicating the controversy;" and because the final injunctive relief that the Parties have agreed upon is appropriate with respect to the class as a whole.

　　　　i.　　**Rule 23(a)**.

　　　　　　a.　　**Numerosity**: There can be no dispute that the class consists of hundreds of thousands, and perhaps millions of people, and is therefore so numerous that joinder is impracticable.   Rexall has been selling Osteo Bi-Flex since 1997, across the United States, and its sales records reveal that a significant number of purchasers of the

13

Osteo Bi-Flex products, and the other products manufactured by Rexall, have occurred which makes joinder of individual consumers not only impracticable, but impossible.

        **b.**    <u>**Commonality**</u>:     "The threshold of 'commonality' is not high," and has been characterized as a "low hurdle." *Otte v. Life Insurance Company of North America*, 275 F.R.D. 50, 54 (D. Mass 2011).   In this case, the members of the class share substantial questions of common interest, including: whether they were misled by Rexall's deceptive claim that its products "renew" or "help renew" cartilage; whether Rexall had adequate substantiation to make those claims; whether Rexall represented that its products have benefits which they did not in fact have; and, as reflected in the injunctive relief to which Rexall has agreed, whether the class members are entitled to equitable relief, including restitution and injunctive relief directing it to remove the misleading and deceptive marketing claims from its labels.

        **c.**    <u>**Typicality**</u>:    A representative plaintiff satisfies the typicality requirement when his injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based upon the same legal theory. The typicality inquiry is designed to align the interest of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals. Typicality, however, does not require that the representative plaintiff's claims be identical to those of the absent class member.   *Hochstadt v. Boston Scientific Corp.*, 708 F.Supp.2d 95, 103 (D. Mass. 2010).

       Here, Jennings' claims are typical of the claims of the other members of the class because he purchased Osteo Bi-Flex based upon the statements that he saw in Rexall's advertising and on its products' labels, as did the other members of the class. His interests are fully aligned and consistent with those of the other members of the class, and there can be no suggestion that he is antagonistic with the class. Furthermore, Jennings suffered the

same injury as the other members of the class, that is spending money for a product that did
not provide the benefit that Rexall claimed, since no one's cartilage was renewed by using the
products.

        **d.**     **Adequacy of Representation:**    In order to show adequacy of
representation, the representative party must show that his interest will not conflict with the
interests of any of the other class members, and that he has chosen counsel that is qualified,
experienced and able to vigorously conduct the litigation.  *Andrews v. Bechtel Corp.*, 780
F.2d 124, 130 (1st Cir. 1985). Here, Jennings' counsel is highly experienced in successfully
prosecuting complex consumer fraud and other complex class actions, and has committed
the financial and legal resources to effectively manage the complexities of this litigation,
having conducted discovery in preparing for trial on a relatively short basis. In addition,
Jennings himself has been an integral part of the prosecution of this case, appearing for
deposition and otherwise responding to discovery, and cannot in any way be seen as having
an interest that is contrary or antagonistic to the other members of the class.

        **ii.**     **Rule 23(b).**

    This case also satisfies both the requirements of Rule 23(b)(2) and Rule 23(b)(3).

        **a.**     **Rule 23(b)(2).**    Rule 23(b)(2) provides that a class action may be
maintained if "the party opposing the class has acted or refused to act on grounds that apply
generally to the class, so that final injunctive relief or corresponding declaratory relief is
appropriate respecting the class as a whole." This matter is ripe for settlement class
certification under Rule 23(b)(2) because

**REDACTED**

        **b.**     **Rule 23(b)(3).**    Additionally, the settlement class satisfies the

predominance requirement of Rule 23(b)(3) because common question of law or fact are predominant. "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Anchem Products*, 521 U.S. at 625. Here, Jennings' claims alleging breach of the Massachusetts Unfair Trade Practices Act will be the same with respect to every class member, because his claims arise from a common course of conduct that occurred over many years in which Rexall misrepresented the benefit of its products. Where, as here, the claims of the class representative and all class members are based upon the same across the board type of conduct by defendants, the predominance requirement of Rule 23(b)(3) is satisfied. *Borcea*, 238 F.R.D. at 676. See, also, *In re Prudential Insurance Company America Sales Practices Litigation*, 148 F.3d 283 (3d Cir. 1998) (affirming district court's approval of class action settlement incorporating certification of a nationwide class of claimants where "many purchasers have been defrauded over time by similar misrepresentations, or by a common scheme to which alleged non-disclosures related."); *Hanrahan v. Britt*, 174 F.R.D. 356, 364 (E.D. Pa. 1997) (settlement class certified under the Racketeer and Corrupt Organizations Act of Amway distributors: "Plaintiffs' allegations paint a picture of scripted, regimented, and uniform oral and written misrepresentations and omissions designed by defendants to induce class members to join the Amway 'family' and then exploit them."); and *Zacharjasz v. The Lomas and Nettleton Co.*, 1988 WL 54066, *16 (E.D. Pa. 1988) (common issues held to predominate because "litigation concerning similar or standardized oral representations contains significant legal or factual questions which are common to the class.").

Likewise, the proposed settlement class likewise satisfies the superiority requirement embedded in Rule 23(b)(3). Generally, for cases "in which there exist a large number of small or medium-sized claims against Defendants which would make individual litigation economically infeasible, a class action is a superior method of litigation." *In re Disposable*

*Contact Lens Antitrust Litigation*, 170 F.R.D. 524, 533 (M.D. Fla., 1996), *citing   In Re Folding Carton Antitrust Litig.*, 75 F.R.D. 727, 732 (N.D. Ill. 1977); *Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y.1976).

### b.   Notice to the Class

When a class has been certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   Fed. R. Civ. P. 23(c)(2)(B). Notice of a pending class action settlement may be directed "in a reasonable manner to all class members who would be bound by the proposal."   Fed. R. Civ. P. 23(e)(1).   The standard for the adequacy of a class action settlement notice is one of "reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113-114 (2d Cir. 2005).   "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id.* at 114 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir.1982) (internal quotation marks and brackets omitted).

Jennings submits the proposed notice attached hereto as Exhibit A.   The proposed notice "clearly and concisely state[s] in plain, easily understood language," all the information required by Rule 23(c)(2)(B).   It explains the pendency of this suit; provides the definition of the settlement class; advises that the Court has preliminarily approved the settlement and conditionally certified the class for settlement purposes; describes the process by which the class members can file claims with the claims administrator; informs class members of their rights and obligations under the proposed settlement; indicates that class counsel will petition the Court for an award of attorneys' fees and costs; and details the relevant dates and procedures that must be adhered to by class members, including the dates and procedures

for becoming a claimant, for opting out of the settlement class, for filing written objections to the settlement (and requesting to appear and be heard at the Fairness Hearing), and the date of the Fairness Hearing at which the Court will consider final approval of the settlement.

Because the class members purchased Rexall's products at retail stores, notice will need to be directed to them by publication.   "…[W]hen class members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process.". *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 107 (S.D.N.Y.2007) (Rule 23(b)(3) class).

Here, Jennings proposes that the Court-approved notice be disseminated as is set forth in the Declaration of Bob Gero, of Heffler Claims Administration.   Heffler Claims Administration specializes in the process of noticing class action settlements and administering the claims process, and its recommendation, based upon the demographics of the class members, is that an on-line Internet advertising campaign be used to advise class members of the settlement, since that will reach the largest number of class members. Jennings also proposes that the claims administrator appointed by the Court maintain a website where all of the information related to this matter, including certain pleadings related to the settlement and a copy of the published notice, can be maintained.   This will satisfy due process.   *See*, e.g., *Cohen v. Chilcott*, 522 F.Supp.2d 105 (D.D.C. 2005) (approving notice plan consisting of publication in USA Today and an Internet campaign targeted to the demographics of the class members); and *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*, 280 F.R.D. 362 (N.D. Ill. 2011) (approving of notice plan consisting of publication in Parade, internet advertising, the maintenance of a website containing the notice, and targeted on-line advertising and sponsored key-word search advertisements).

The proposed notice and the plan of notice satisfy the requirement that a class

certified pursuant to Federal Rule 23(b)(3) be provided "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In such cases, "actual notice to each party that would be bound by the adjudication of the class action is not required." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 840 (E.D. La. 2007) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313-14 (1950)). *Accord Gross v. Barnett Banks, Inc.*, 934 F. Supp. 1340 (M.D. Fla. 1995). Rather, the issue is "whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Turner*, 472 F. Supp. at 840 (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). Because the proposed notice and plan will fairly apprise the class members of the pendency of the class action, the terms of the Settlement, and their rights thereunder, Jennings' proposal as to how to disseminate the notice constitutes the best notice practicable under the circumstances.

c.    **Appointment of Claims Administrator**

Jennings also petitions the Court to appoint Heffler Claims Administration as the claims administrator. (Heffler Claims Administration's company profile is attached as Exhibit B). A claim form will be prepared and approved by the Court for class members to file claims (a proposed claim form is attached hereto as Exhibit C), which will be available on the website regarding the settlement, and which can be completed by the class members either on-line or by filing a hard copy of the claim form with the claims administrator. As with the cost of notice to the class members, the cost of claims administration will be borne entirely by Rexall, thus not diminishing the monetary benefit to the class.

d.    **Proposed Schedule of Events**

Jennings believes that the following is a reasonable time-line of events that the Court and the Parties can follow to effectuate the settlement:

19

| January 2013 | Court Conference/hearing re: Motion for Preliminary Approval |
|---|---|
| February or March 2013 (45-60 days after preliminary approval) | Notice Published |
| April or May 2013 (60 days following notice) April 2013 (60 days following notice) | Opt-Out Date: deadline for class members to opt out of Settlement. Objection Date: deadline for class members to object to terms of Settlement. |
| April or May 2013 | Last day to file notice of appearance for class members who do not object but who wish to be heard at the Final Approval Hearing. |
| May or June 2013 (15 days before final fairness hearing) | Last day for parties to file submissions in support of Final Approval and/or responses to objections, if any. |
| May or June 2013 | Final Approval Hearing |

**WHEREFORE**, Plaintiff, Richard Jennings, respectfully requests that the Court should grant its preliminary approval of the class action settlement, conditionally certify a class of claimants and appoint his counsel as class counsel, approve the form of the notice to be published to the class members and approve the form of dissemination of that notice, set a date for the final fairness hearing, and grant him all other and further relief to which he may be entitled.

Dated:      White Plains, New York
           January 9, 2013

                      Respectfully Submitted,

                      /s/ Peter N. Freiberg
                      Jeffrey I. Carton (Admitted *Pro Hac Vice*)
                      Peter N. Freiberg (Admitted *Pro Hac Vice*)
                      James R. Denlea (Admitted *Pro Hac Vice*)
                      DENLEA & CARTON LLP
                      One North Broadway
                      White Plains, New York 10601

                      Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on today's date.

/s/ Peter N. Freiberg