IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RICHARD JENNINGS, on behalf of himself and all others similarly situated, | Civil Action No. 1:11-cv-11488-WGY |
| Plaintiff, | |
| vs. | **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF NATIONWIDE CLASS SETTLEMENT** |
| REXALL SUNDOWN, INC., | |
| Defendant. | |

Defendant Rexall Sundown, Inc. ("Defendant" or "Rexall") hereby submits this Response

to Plaintiff's Motion for Preliminary Approval of Nationwide Class Settlement ("Pl. Motion")

[D.E. 87], and Plaintiff's Memorandum filed in support thereof ("Pl. Mem.") [D.E. 90].  In

moving for preliminary approval of  a nationwide class, Plaintiff relies not on any executed

settlement agreement between all parties and counsel (because one does not exist) but rather a

Memorandum of Understanding ("MOU") that was both subject to the execution of a final

settlement agreement (which never occurred) and conditioned on counsel for Plaintiff

("Jennings' counsel") obtaining the consent and participation of all plaintiffs' counsel in related

litigation[1] (which also never occurred).

Based on representations made to counsel for Rexall, Jennings' counsel has been unable

to obtain the consent and participation of the plaintiffs' counsel in the related cases ("Other

Plaintiffs' Counsel") because the two groups of plaintiffs' counsel cannot agree on how to

allocate attorneys' fees.  While Rexall never assumed Jennings' responsibility to obtain the

---

[1] *Liliana Cardenas v. NBTY, Inc. and Rexall Sundown, Inc.*, No. 2:11-CV-01615-LKK-CKD (E.D. Cal. filed June 14, 2011); *Cecilia Linares and Abel Gonzalez v. Costco Wholesale, Inc.*, No. 3:11-cv-02547-MMA-RBB (S.D. Cal. filed Nov. 2, 2011); *Nick Pearson v. Target Corp.*, No. 1:11-cv-07972 (N.D. Ill. filed Nov. 9, 2011); *Ray Padilla v. Costco Wholesale Corp.*, No. 1:11-cv-07686 (N.D. Ill. filed Oct. 28, 2011).

participation of the Other Plaintiffs' Counsel, in order to try to achieve the objectives of the

MOU, Rexall negotiated directly with Other Plaintiffs' Counsel and was able to reach agreement

on all terms other than the allocation of attorneys' fees among plaintiffs' counsel.  Rexall agrees

with Jennings that the terms contemplated by the MOU are fair, adequate, and reasonable

compensation for the class,[2] and agrees that the MOU was negotiated at arms' length after

sufficient discovery.  But while Rexall desires to move forward with a global resolution along

the terms contemplated by the MOU, Rexall cannot agree to Plaintiffs' motion because it is

based on an MOU with conditions that have not yet been met – in particular, (i) Jennings'

counsel obtaining the consent and participation of Other Plaintiffs' Counsel, and (ii) finalization

of a global settlement agreement between all parties and counsel.  Until Jennings' counsel

obtains the participation of Other Plaintiffs' Counsel (which appears to be stalled because of a

fee dispute between them), the conditions of the MOU have not been met, and there is no

settlement.  Jennings' motion is therefore premature.

I.      **THE PARTIES' AGREEMENT ON THE SUBSTANTIVE TERMS OF A
        SETTLEMENT.**

On September 30, 2012, Rexall and Jennings entered into a non-binding MOU

conditionally providing for a global settlement of not only the *Jennings* case, but four other

glucosamine-related putative class actions brought by a different set of lawyers, pending in

federal courts in other districts (*see* n. 1).  (The MOU was attached as Ex. A to the Declaration of

Peter N. Freiberg [D.E. 88-1].)  The MOU provided that Rexall would not object to an attorneys'

fee award up to a certain identified amount (MOU at ¶ 7), but did not discuss a method of

allocation among the two groups of plaintiffs' counsel.

---

[2] Rexall disagrees, however, with Plaintiff's descriptions and characterizations of the fact and expert evidence he purports would be put forth at trial, and also disagrees with Plaintiff's view of the merits of his case and Rexall's substantiation for its claims, as laid out in his Memorandum, pp. 1-4 [D.E. 90].

At the outset of settlement negotiations in the *Jennings* case, Rexall made clear to Jennings' counsel that, if the settlement was to be a nationwide settlement, all plaintiffs' counsel in all of the related cases must participate.  12/13/12 Declaration of Kara McCall ("McCall Decl.") [D.E. 84] ¶ 3.  Jennings' counsel thereafter agreed to negotiate the terms of the MOU with the full understanding that they would be required to obtain the participation of the Other Plaintiffs' Counsel, which would be a prerequisite to settlement of this case even if the parties to the *Jennings* action could agree on the terms of the MOU.  *Id.*

Accordingly, several provisions in the MOU made clear that the nationwide settlement was subject to the execution of a final global settlement agreement and was conditioned upon ***Jennings' counsel*** obtaining the consent and participation of the plaintiffs in the related litigation and the Other Plaintiffs' Counsel.  (*See* Section II, *infra*.)[3]  It is Rexall's understanding that, shortly after the parties executed the MOU, Jennings' counsel attempted to secure the participation of Other Plaintiffs' Counsel, but has not been able to do so.  Indeed, it is Rexall's understanding that, until very recently, Other Plaintiffs' Counsel refused to negotiate with Jennings' counsel.

In an attempt to further the negotiations, Rexall's counsel held discussions directly with Other Plaintiffs' Counsel.  Ultimately, Rexall successfully obtained Other Plaintiffs' Counsel's consent to the MOU's terms and also agreed to additional injunctive relief.  That is, there is agreement among Jennings, Other Plaintiffs' Counsel, and Rexall regarding the compensation to be paid to the class, the claims-made nature of the settlement, and the label changes to be made for the relevant glucosamine products.

---

[3] The settlement is also "expressly conditioned on . . . (ii) approval by the Board of directors of Defendant's ultimate parent, and (iii) the agreement of the customers of Defendant and its affiliates."  K. McCall Decl. [D.E. 84] ¶ 6.  Neither of these additional conditions can be met unless and until there is full participation by all plaintiffs' counsel.

Upon reaching such agreement on the substantive terms,[4] Jennings' counsel and Other Plaintiffs' Counsel began discussing allocation of the attorneys' fees amount contained in the MOU.  Unfortunately, both Jennings' counsel and Other Plaintiffs' Counsel have separately represented to Rexall's counsel that they are at an impasse on such allocation.  This allocation issue (completely outside of Rexall's control and, quite frankly, the responsibility of Jennings' counsel) is the only remaining open issue.

II.   **PLAINTIFFS' COUNSEL'S IMPASSE ON ALLOCATION OF ATTORNEYS' FEES HAS PREVENTED THE SIGNING OF A FINAL SETTLEMENT AGREEMENT.**

While Rexall agrees that the terms laid out in the MOU are fair, adequate, and reasonable for the class, Rexall's agreement to pay such consideration (and attorneys' fees) was conditioned on global peace – that is, the termination of all glucosamine-related litigation against Rexall and its affiliates.  Although Rexall still desires to move forward with the settlement, it can only do so – and will only do so – if all plaintiffs and their counsel are involved and all related litigation would be resolved.

For this reason, the MOU included several provisions making clear that the MOU could not be enforced if the conditions requiring full participation by all plaintiffs and their counsel were not met:  Paragraph 10 of the MOU provided that "[t]he Settlement of the Litigation, and the Parties' obligation to execute the Settlement Agreement, are expressly conditioned on (i) Plaintiff obtaining the consent of all named plaintiffs and their counsel in the Related Litigation . . . ."  McCall Decl. [D.E. 84] ¶ 6.  The introductory paragraph of the MOU states that

---

[4] Indeed, it would likely have been considered improper for them to begin discussing attorneys' fees until there was agreement on consideration for the class.  *See Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999); *Duhaime v. John Hancock Mut. Life Ins. Co*., 177 F.R.D. 54, 68 (D. Mass. 1997).

the MOU is "[s]ubject to the execution of a written settlement agreement." *Id*. ¶ 4.[5] Paragraph 9

of the MOU similarly states that "[t]his MOU does not constitute a binding settlement agreement

and shall not be admissible in court or otherwise used for any purpose whatsoever other than as a

memorandum of the Parties' general understandings and their intent to negotiate further over the

non-financial terms of any settlement." *Id*. ¶ 5. The intent of full participation by all plaintiffs

and their counsel is further reflected in the MOU provision for service awards of $2,000 for each

of the named plaintiffs in the other lawsuits (MOU ¶ 7).  Because Jennings has not obtained the

requisite consent of the Other Plaintiffs' Counsel or their clients, and no written settlement

agreement has been or could have been executed, these key conditions have not been satisfied.

*See, e.g.*, *Sands v. Ridefilm Corp.*, 212 F.3d 657, 662 (1st Cir. 2000) (where a "condition

precedent was not met, no binding obligation existed and no enforceable contract was created

between the parties").[6]

Finally, the parties' post-MOU conduct reflects their joint understanding that the MOU

was not intended to be a binding, enforceable document without a subsequently-signed

settlement agreement.  Neither of the parties ever requested that the case be removed from the

---

[5] *See Mass Cash Register, Inc. v. Comtrex Sys. Corp.*, 901 F. Supp. 404, 415 (D. Mass. 1995) ("When 'parties contemplate the execution of a final written agreement,' a strong inference is made that they 'do not intend to be bound by earlier negotiations or agreements until the final terms are settled.'") (quoting *Rosenfield v. U.S. Trust Co.*, 290 Mass. 210, 216, 195 N.E. 323, 325 (1935); *20 Atl. Ave. Corp. v. Allied Waste Indus., Inc.*, 482 F. Supp. 2d 60, 74 (D. Mass. 2007) ("'[T]he fact that a writing refers to a formal document to be executed in the future' . . . is strong evidence 'that the parties do not intend to be bound until the formal document is hammered out.'") (quoting *Gel Sys., Inc. v. Hyundai Eng'g & Constr. Co.*, 902 F.2d 1024, 1027 (1st Cir. 1990)); *Mendel Kern, Inc. v. Workshop, Inc*., 400 Mass. 277, 281, 508 N.E.2d 853, 856 (1987) (fact that parties contemplated additional document "is cogent evidence that they did not intend that the letter of intent, even when accepted by [the plaintiff], would constitute a binding agreement").

[6] *See, e.g., McCarthy v. Tobin*, 429 Mass. 84, 87, 706 N.E.2d 629, 631 (1999) (In determining whether a pre-contractual agreement like the MOU constitutes an enforceable contract, "[t]he controlling fact is the intention of the parties."); *accord Hunneman Real Estate Corp. v. Norwood Realty, Inc.*, 54 Mass. App. Ct. 416, 421, 765 N.E.2d 800, 804 (2002) ("The most recent pronouncements in our cases on the subject of the enforceability of precontractual agreements place great reliance on the intention of the parties.").

Court's trial calendar. On October 10, 2012, Jennings' counsel asked only that trial be postponed, 10/10/12 P. Freiberg Email (McCall Decl. [D.E. 84] Ex. A at 2), and the Court responded by postponing the trial until October 22, 2012. 10/11/12 Email from Court (*id.* at 1). On October 18, 2012, Jennings' counsel asked only that the Court "continue the trial to another trial term to provide the parties additional time to finalize a global resolution." 10/18/12 P. Freiberg Email (McCall Decl. [D.E. 84] Ex. B at 2). In doing so, Jennings' counsel informed the Court that the parties "will be in a position to report on the status of this matter within three weeks." *Id*. Jennings' counsel clearly recognized the need to keep the Court apprised of the progress of ongoing negotiations that were still uncertain to result in the hoped-for global settlement.[7]

In short, while the parties, including Other Plaintiffs' Counsel, have reached agreement on all terms material to the class, there can be no final settlement agreement on the terms reflected in the MOU while plaintiffs' counsel remain at an impasse on allocation of attorneys' fees. Rexall agreed to the terms of the MOU only on the condition that the settlement provide a global resolution. Without such global resolution, the MOU should not and cannot be enforced. Additionally, the enforcement of the MOU – without an executed settlement agreement and without the other conditions having been met – creates serious appellate implications for the settlement. Finally, even if the settlement were not finally approved, preliminary approval alone normally results in significant time and expense in providing notice to the class, but, as discussed below, approval of the MOU will not enable the process to begin because the appropriate notice process has not yet been spelled out in an actual settlement agreement.

---

[7] Because Jennings' counsel was responsible for obtaining the consent and participation of Other Plaintiffs' Counsel so that the global resolution could be realized and a settlement agreement effectuated, it was Jennings' counsel, not Rexall's, who provided updates to the Court regarding *his* views of the movement towards final settlement.

III.   **SEVERAL QUESTIONS ARE LEFT UNANSWERED IN PLAINTIFF'S MOTION AND THE MOU.**

Because the six-page MOU was never intended to be the final embodiment of a global settlement agreement resolving all related litigation pending in three different states, it does not cover many issues that are necessary to a full understanding of the parties' (including the class members') rights and obligations.  For instance, the MOU does not discuss any timing issues related to the claims period or payments to the class.  Rexall should not be required to pay any money – either to the class or to the plaintiffs' attorneys – unless and until there is a final judgment, the time for filing an appeal has passed or, if an appeal is filed, the appeal is considered and the judgment is upheld.  As another example, the MOU does not discuss how the settlement would be administered, *i.e.*, it does not identify the claims administrator, describe the claims process, explain how claims would be considered, or provide methods by which a claimant could respond if his or her claim was denied.  The MOU does not describe the notice process, *i.e.*, it does not identify the type of publication or individual notice, and does not describe what the notice would look like or when it would be published.[8]  The MOU does not describe the opt-out or objection process, by which class members would be able to opt out or object to the settlement, and does not explain the process by which a party may be able to withdraw from the settlement, *e.g.*, if it is not approved in all respects, and, if so, what the effect of that withdrawal will be.  Plaintiff's papers also improperly define the scope of the Settlement

---

[8]  While Rexall does not believe this is the proper time or place to discuss the notice plan proposed by Jennings' counsel, the notice plan is a key component to any class action settlement and is a major factor in consideration of the appropriateness of the settlement and the release granted to the Defendants.  The MOU contemplates that Rexall will pay the costs of notice, but there has been no discussion, and no agreement reached, between Rexall and Jennings concerning what the notice plan should consist of. Rexall will object to the payment of any notice costs unless and until all conditions to the MOU have been met and a final settlement agreement involving all plaintiffs and their counsel and addressing all material terms of settlement has been executed.

Class and the covered products.  For example, the settlement class, as proposed by Plaintiff, includes private label products that were never supplied by Rexall (*e.g*., Target Up & Up Advanced Glucosamine Chondroitin Complex), or were only supplied by Rexall during certain time periods in certain locations (*e.g*., Costco Kirkland Signature Extra Strength Glucosamine Chondroitin and Costco Kirkland Signature Extra Strength Glucosamine HCl with MSM).

In short, the MOU does not provide, and Rexall has never agreed to, all of the material terms and conditions that are necessary to a full understanding by this Court, the parties, and the class members of the scope of the settlement and the parties' rights and obligations thereunder.

## CONCLUSION

Rexall desires a global settlement involving all plaintiffs' counsel on the terms reflected in the MOU, and has reached agreement with all plaintiffs' counsel on all terms material to the class.  Unfortunately, there is no executed settlement agreement because of plaintiffs' counsel's impasse on allocation of fees.  Without an executed settlement agreement among all parties (including Other Plaintiffs' Counsel), the MOU cannot be enforced.

Dated: January 10, 2013                                    SIDLEY AUSTIN LLP


By:/s/ Kara L. McCall
    Kara L. McCall
    kmccall@sidley.com
    SIDLEY AUSTIN LLP
    One South Dearborn Street
    Chicago, Illinois  60603
    Telephone:  (312) 853-7000
    Facsimile:  (312) 853-7036

By:  /s/ Donald. R. Frederico
Donald R. Frederico, BBO #178220
dfrederico@pierceatwood.com
PIERCE ATWOOD LLP
100 Summer Street, Suite 2250
Boston, MA  02110
Telephone: (617) 488-8141
Facsimile: (617) 824-2020

*Attorneys for Defendant Rexall Sundown,
Inc.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the above was served upon the attorney of record for all parties via the Court's electronic filing system on January 10, 2013.

/s/  Donald. R. Frederico
Donald R. Frederico